UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CORI DUVALL,

                           Debtor-Plaintiff,

                    v.

COUNTY OF ONTARIO, NEW YORK,
JOHN DOE, JANE DOE,

                           Defendants-Appellants.
_____

DECISION AND ORDER

21-CV-6236L

## INTRODUCTION

Appellants the County of Ontario, New York (the "County"), and John Doe and Jane Doe (the "Doe appellants"), appeal from an order of the United States Bankruptcy Court for the Western District of New York ("Bankruptcy Court"), dated February 18, 2020, following a bench trial, which granted a petition by appellee Cori DuVall (the "debtor") to avoid a transfer of real property under 11 U.S.C. §§522(h) and 548(a)(1)(B). *DuVall v. County of Ontario*, 2021 Bankr. LEXIS 369 (W.D.N.Y. Bankr. 2021). (Dkt. #1-2).

Appellants also appeal from another order of the Bankruptcy Court, dated September 29, 2020, which had denied the County's *in limine* motion to offer evidence at trial concerning the value of an annuity held by the debtor. (Dkt. #1-1).

For the reasons set forth below, the decisions appealed from are affirmed, and the appeal is dismissed.

**FACTUAL BACKGROUND**

This matter arises from the *in rem* tax foreclosure of real property situated at 9097 County Road 14 in the town of West Bloomfield, Ontario County, New York (the "Property"), for taxes arising on and after January 1, 2015. The Property consists of a 49-acre farm and residence, which was deeded to the debtor by her mother on December 29, 2014.

In October 2016, the County issued a tax foreclosure petition and statutory foreclosure notices, advising that interested parties had the right to redeem the Property by payment of unpaid tax liens, interest, and penalties, on or before January 13, 2017.

Debtor did not redeem the Property or answer the foreclosure petition, and a default judgment of foreclosure on the Property was entered on March 7, 2017. The debtor filed an application to vacate the foreclosure in May 2017, which was denied by the Ontario County Supreme Court in June 2017. The debtor appealed, and in February 2019, the Appellate Division, Fourth Department, affirmed the foreclosure. In the meantime, the Property had been sold to the Doe appellants at auction on May 17, 2017. However, title was not actually transferred to the Doe appellants: the transfer was deferred pending final legal resolution of the matter.

The debtor filed a Chapter 13 bankruptcy petition on or about March 1, 2019, and submitted a Chapter 13 plan on March 13, 2019. Her filings disclosed that she was the beneficiary of an annuity (the "Annuity") from a settlement with the State of New York, with an "unknown" total value, and identified the Annuity as exempt property pursuant to Section 522(d)(11)(E) of the Bankruptcy Code ("Section 522"), which exempts settlements compensating for the loss of future earnings. The debtor's Chapter 13 plan specified that the County's tax liens would be paid in full, as well as all claims by unsecured creditors. It also indicated the debtor's intent to bring an adversary proceeding to challenge the County's tax foreclosure of the Property as a "fraudulent

conveyance" under 11 U.S.C. §548(a)(2)(B) ("Section 548"). The County was served with copies of the filings and plan on March 14, 2019. (Dkt. #1-1 at 3).

The debtor commenced the underlying proceeding on April 25, 2019, and the County was served with the Summons and Complaint on May 3, 2019. The County did not object to the exemptions claimed by the debtor, or request any extension of time to do so.

The parties engaged in discovery, including disclosures relative to the Annuity, and the County ultimately retained a valuation expert to calculate its value as of the foreclosure date. The debtor objected to the County's attempt to offer evidence challenging the exempt status of the Annuity, as the County had failed to make any objection to it within the thirty-day limitation period established by Fed. R. Bank. Proc. 4003(b) ("Rule 4003").

The County moved *in limine* to admit valuation evidence as part of the Bankruptcy Court's insolvency analysis, and on September 29, 2020, the Bankruptcy Court issued a Decision and Order barring the admission of valuation evidence for the Annuity, due to the County's failure to timely object to the debtor's claim of exemption. (Dkt. #1-1).

The matter was tried in November 2020, and on February 18, 2021, the Bankruptcy Court issued a Decision and Order voiding the *in rem* tax foreclosure of the Property as a constructively fraudulent conveyance under Section 548(a)(2)(B). *DuVall*, 2021 Bankr. LEXIS 369, Dkt. #1-2.

This appeal, of both the September 29, 2020 and February 18, 2021 decisions by the Bankruptcy Court, followed.

**DISCUSSION**

**I.      Standard of Review**

Pursuant to 28 U.S.C. §158, "the district courts of the United States . . . have jurisdiction to hear appeals . . . from final judgments, orders, and decrees" of a Bankruptcy Court judge. 28 U.S.C. §158(a)(1). In assessing the Bankruptcy Court's conclusions of law, a *de novo* standard is applied. In reviewing the Bankruptcy Court's conclusions of fact, the Court is not authorized to engage in independent factfinding, and reviews the Bankruptcy Court's determinations only for clear error. *See Morgan v. Gordon*, 450 B.R. 402 (W.D.N.Y. 2011).

**II.     The Bankruptcy Court's Ruling Barring Evidence of Annuity Value**

Initially, the County argues that the Bankruptcy Court erred when it barred the County from introducing evidence concerning the value of the Annuity.

To demonstrate that a transfer is constructively fraudulent under Section 548, a plaintiff must show that they were already insolvent, or were rendered insolvent, on the date of the transfer, and that they received less than reasonably equivalent value for their property.

Insolvency is defined as the value of an individual's property, minus property that can be exempted under Section 522(b). Section 522 provides that "[t]he debtor shall file a list of property that the debtor claims as exempt [and u]nless a party in interest objects, property claimed as exempt on such list *is exempt*." Section 522(l)(emphasis added). The debtor, in her bankruptcy filings, designated the Annuity as exempt property under Section 522(d)(11)(E), which exempts settlements compensating for future lost earnings. The County made no objection, nor did it request additional time to file objections.

The Bankruptcy Court held that because the County had failed to timely object to the debtor's March 2019 designation of the Annuity as exempt, or to request an extension of time to

4

do so, the County was barred from thereafter attempting to argue or prove that the Annuity should not have been exempted. The County argues that this was erroneous, and suggests that the Bankruptcy Court, in assessing the debtor's solvency as of the foreclosure date, was required by overarching "principles of equity" to independently examine whether the Annuity was, in fact, properly exempt. In so arguing, the County asks the Court to follow and apply the holding in *Wisotzke v. County of Ontario,* 2011 Bankr. LEXIS 321 (Bankr. W.D.N.Y. 2011).

In *Wisotzke*, the Bankruptcy Court held that regardless of whether an exemption had been properly claimed or timely objected-to by a party in interest, the "plain language" of Section 522(h), which permits avoidance of the transfer of property that a debtor "could have exempted," suggested that it was necessary for the Court to make its own determination of whether the exemption was proper, and thus, whether the debtor had standing to bring an adversary proceeding. *Id.*[1]

The Court declines to follow *Wisotzke*, noting, as the Bankruptcy Court did in this matter, that the *Wisotzke* court did not mention or consider the effect of Rule 4003 in its decision, or the import of the County's failure to timely object to the exemption, and overlooked controlling Supreme Court precedent. In *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992), the Supreme Court unequivocally held that the validity of an exemption cannot be challenged after the expiration of the 30-day period prescribed by Rule 4003, even if the debtor had no "colorable statutory basis for claiming it." *Taylor*, 503 U.S. 638 at 643.

*Taylor*'s holding remains the governing authority on this issue, and has been subsequently recognized and applied in this Circuit. *See State Bank of India v. Chalasani*, 92 F.3d 1300, 1310

---

[1] The Court observes, as did the Bankruptcy Court, that in the "[now 10] years since the *Wisotzke* court issued its decision, not a single court has cited it with approval." In fact, the only court that has cited it declined to follow it. *See In re Cutignola*, 450 B.R. 445, 449 (Bank. S.D.N.Y 2011).

5

(2d Cir. 1996) (citing *Taylor*, wherein "the Supreme Court has held that no exception to the 30-day deadline [for objecting to claims of exemptions under Bankr. R. 4003] could be implied," even where it may "lead to harsh results," and extending the application of *Taylor*'s holding to the 60-day timeline for objections by creditors under Bankr. R. 4004); *GMAC Mortg., LLC v. Orcutt*, 506 B.R. 52, 61 n.5 (D. Vt. 2014)(noting that "[u]nder Rule 4003(b), a party must file an objection [to exemption designations] with a certain time period, or is otherwise barred from 'challenging the validity of the exemption' thereafter") (quoting *Taylor*, 503 U.S. 638 at 642).

While the Supreme Court noted that demanding strict compliance with the deadlines of Rule 4003 "may lead to unwelcome results," it was necessary in order to "prompt parties to act and . . . produce finality." *Id.*, 503 U.S. 63 at 644. Thus, while the County's tardiness in attempting to object to the exemption of the Annuity precluded it from offering proof on the matter at trial, the compelling interests of judicial efficiency and finality require that the validity of the exemption cannot be challenged – directly or indirectly – after the expiration of the statutorily-prescribed deadline. The County's failure to object was its own doing, and there are consequences for that neglect.

Exempt property is excluded from an insolvency analysis pursuant to 11 U.S.C. §101(32)(A)(ii), and as discussed above, the County's failure to object to the exemption of the Property meant that the property "[wa]s exempt" by operation of Section 522(l). The Bankruptcy Court's September 29, 2020 Decision and Order denying the County's *in limine* motion is accordingly affirmed.

### III. The Bankruptcy Court's Decision Declining To Extend *BFP v. Resolution Trust* To *In Rem* Tax Foreclosures

The County also argues that the Bankruptcy Court erred by declining to extend the holding of *BFP v. Resolution Trust*, 511 U.S. 531 (1994), a mortgage foreclosure action, to the instant *in rem* tax foreclosure proceeding.

*BFP* held that a mortgage foreclosure action that has been conducted in accordance with state law is, absent a "clear statutory requirement to the contrary," entitled to a presumption that the debtor had received "reasonably equivalent value" for their property under Section 548. In so holding, the Supreme Court emphasized the need to respect a state's authority to carry out its own foreclosure laws and regulations. *Id.,* 511 U.S. 531 at 539.

Courts examining the question of whether to extend *BFP* from mortgage foreclosure actions to *in rem* tax foreclosure proceedings have reached divergent conclusions. Some, including this Court, have found that *BFP* does not deprive an *in rem* tax foreclosure debtor of standing to bring an avoidance proceeding, where the legal protections cited by the Supreme Court as the underpinning for *BFP*, which tend to ensure the debtor's receipt of a more reasonably equivalent value under forced-sale circumstances, are absent from the applicable state law foreclosure scheme. *See Hampton v. County of Ontario*, 588 B.R. 671 (W.D.N.Y. 2018)(Geraci, J.)(*BFP* does not deprive an *in rem* tax foreclosure debtor of standing to bring an avoidance proceeding, because New York's *in rem* tax foreclosure scheme lacks the modern legal protections that tend to ensure the receipt of a more reasonably equivalent value under forced-sale circumstances, such as those cited in justification of the *BFP* holding).[2] *See also Hackler v. Arianna Holdings Co., LLC*, 938 F.3d 473, 479-80 (3rd Cir. 2019)(declining to extend *BFP* to New Jersey tax foreclosures,

---

[2] The Bankruptcy Court's final decision in *Hampton,* and its final decision in another matter presenting identical questions of law, *Gunsalus v. Ontario County*, were consolidated for purposes of an appeal to the Second Circuit. The appeal is not scheduled to be argued until December 2021. *See e.g.*, Second Cir. 20-CV-3865, Dkt. #60.

collecting cases, and observing that whether a state's tax sale procedures offer sufficient protections to encourage the debtor's receipt of "reasonably equivalent value" is largely determinative of whether *BFP* can be applied); *Yourelo Your Full-Service Relocation Corp. v. City of Revere*, 2020 Bank. LEXIS 3287 at *13, *18-*19 (Mass. Bankr. 2020) (declining to extend *BFP* to tax foreclosure proceedings, noting that "[c]ourts extending the reasoning of *BFP* to strict foreclosure of tax liens have relied on the existence of appropriate procedural safeguards ensuing due process," and finding that "the procedural due process protections afforded the taxpayer by the Massachusetts strict foreclosure statute [are insufficient to] immunize the City from . . . fraudulent conveyance claims").

In contrast, other courts have opted to extend *BFP* to *in rem* foreclosures regardless of whether the applicable state law operated to ensure the receipt of a more reasonable equivalent value, finding that "*BFP[]* . . . eschewed any consideration of the substantive value received in a forced-sale context and instead pinned the validity of the transfer [solely] on whether the forced sale was non-collusive and conducted in compliance with state law." *T.F. Stone Co. v. Harper*, 72 F.3d 466, 470 (5th Cir. 1995). *See also Kojima v. Grandote Int'l,* LLC, 252 F.3d 1146, 1151-52 (10th Cir. 2001); *Tracht Gut, LLC v. Los Angeles County Treasurer*, 836 F.3d 1146, 1154 (9th Cir. 2016).

Here, the Bankruptcy Court determined that *BFP* should not be extended to *in rem* tax foreclosure proceedings, adopting the reasoning set forth in *Hampton.* 588 B.R. 671 at 675. In *Hampton*, which involved two prior *in rem* tax foreclosures by the County, the Court rejected the County's attempt to extend the holding of *BFP*. The Court observed that the Supreme Court's holding in *BFP* was preceded by, and hinged upon, a discussion of the ways in which the protections afforded to homeowners under modern mortgage foreclosure laws work together to

avoid the "draconian consequences" of outdated strict foreclosure schemes. These include notice to defaulting borrowers, significant time allowances before the commencement of foreclosure proceedings, public notice of the sale, and strict adherence to set bidding rules and auction procedures. *Hampton*, 588 B.R. 671 at 675 (citing *BFP*, 511 U.S. 531 at 542). Indeed, the Supreme Court had explicitly limited its holding in *BFP* to "mortgage foreclosures of real estate," on the grounds that "considerations bearing upon other foreclosures and forced sales *(to satisfy tax liens, for example*) may be different." *BFP*, 511 U.S. 531 at 537 n.3 (emphasis added).

In *Hampton*, the Court found that in contrast to the modern and borrower-protective mortgage foreclosure laws touted in *BFP*, New York's Real Property Tax Law ("RPTL") was *precisely* the kind of "draconian" strict foreclosure regime that the Supreme Court had characterized in *BFP* as a relic of the unenlightened past. For example, the RPTL "does not provide for a *pre-seizure* auction whereby the debtor may recover equity," and does not prescribe a competitive bidding process, or otherwise allow market forces to generate a reasonably equivalent value. *Hampton*, 588 B.R. 671 at 676 (emphasis in original).

Here, as in *Hampton*, the County took title to the Property prior to any sale, and because the debtor thereby lost all equity in the Property, no bidding rules or procedures, even if followed, could possibly have inured to the benefit of the debtor or to any creditor other than the County, let alone ensured that the debtor received reasonably equivalent value. Unlike the forced sale in *BFP* to foreclose on a real property mortgage, the amount owed in this matter for property taxes ($22,434.40) bore no rational relationship to the value of the subject Property (which, assuming *arguendo* that the auction price is remotely suggestive of fair market value, is no less than $91,000), and the proceeds of the forced sale would result in a substantial windfall to the County, at the expense of all other creditors.

The Court finds the Bankruptcy Court's reasoning in this matter, and the Court's analysis in *Hampton*, to be persuasive. "Ultimately, state interests must be balanced against [the Bankruptcy Code's] strong policy favoring equal treatment of creditors.'" *Hampton*, 588 B.R. 671 at 677-78 (quoting *In re McMahon*, 129 F.3d 93, 97 (2d Cir. 1997)). Moreover, the "broader purposes of the Bankruptcy Code and its fraudulent transfer provisions [are] to ensure both a fair distribution of the debtor's assets among creditors *and a fresh start for the debtor*," aims that are better served where, as here, the debtor is permitted to retain their exempt equity, while repaying the County and other creditors. *Hampton v. DuVall*, 2020 Bankr. LEXIS 447 at *20-*21 (W.D.N.Y. Bankr. 2020)(determining, on remand, that the subject transfer should be set aside as a fraudulent conveyance)(quoting *In re Smith*, 811 F.3d 228, 238 (7th Cir. 2016)).

The Court thus finds that *BFP*'s holding does not operate to shield the County from the debtor's claim of fraudulent conveyance, in light of the competing interests and the particular forced sale scheme presented here. The Bankruptcy Court's holding to that effect is affirmed.

**IV.     The Bankruptcy Court's Finding As To The Debtor's Standing**

The Bankruptcy Code provides that a Chapter 13 debtor, "may avoid a transfer of property . . . to the extent that the debtor could have exempted such property. . ." Section 522(h).

The County argues that Section 522(c)(2)(B), which holds that property exempted under Section 522 remains liable for "a tax lien, notice of which is properly filed," bars the debtor from setting aside the transfer of the Property as a fraudulent conveyance under Section 548. However, as the Bankruptcy Court found, the plain language of "Section 522(c)(2)(B) [does not] bar[ the debtor] from claiming [an] exemption": it "merely provides that exempt property remains liable for a tax lien." *DuVall*, 2021 Bankr. LEXIS 369 at *8.

The Court concurs, and declines to follow the case law from other jurisdictions that has been cited by the County in support of a contrary result (Dkt. #6 at 41-42), none of which is authoritative in this Circuit. The Court also observes that setting aside the transfer of the Property does not prevent the County from collecting on the lien: the debtor has not attempted to use Section 522 to avoid the tax lien itself, but only the transfer of the Property. The debtor's Chapter 13 plan continues to hold her liable for the tax lien, and provides for its payment in full.

## V.     The Appropriate Remedy

Finally, the County argues that the debtor's damages should be limited to the amount of claims made by other creditors, or alternatively to the amount of her claimed exemption, rather than an avoidance of the tax foreclosure. Specifically, the County argues that the purpose of avoidance actions is to benefit other creditors, and that avoidance should not be permitted if the benefit will inure primarily to the debtor, and permit the debtor to reap a windfall.

This argument was not raised before, or decided by, the Bankruptcy Court, and as such, it is not properly before this Court.

Assuming *arguendo* that this argument was properly before the Court, I find no clear error in the Bankruptcy Court's determination that avoidance of the transfer under Section 522, and the restoration of title to the Property to the debtor, is a proper remedy which would "greatly increase the probability of a successful reorganization under the Chapter 13 plan." *DuVall*, 2021 Bank. LEXIS 369 at *15.

I have considered the remainder of the County's arguments, and find them to be without merit.

## CONCLUSION

For the foregoing reasons, the decisions appealed from (Dkt. #1-1, #1-2) are affirmed, and this appeal is dismissed in its entirety, with prejudice. The Clerk is directed to close the case.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
November 9, 2021.